IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHAEL REITZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-959 (RDA/LRV) |
| | ) |
| CVY OF ALEXANDRIA, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant General Motors, LLC's Motion to Dismiss Count II and Count IV of Plaintiff's Amended Complaint (Dkt. 32) (the "GM Motion") and Defendants Geneva Enterprises, LLC's and CVY of Alexandria, LLC's[1] Motion to Dismiss Plaintiff's VCPA Claim (Dkt. 36) (the "VCPA Motion"). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motions together with the Memoranda in Support (Dkts. 33, 37), Plaintiff Michael Reitz's ("Plaintiff") Oppositions (Dkts. 38, 41), and Defendant GM's Reply (Dkt. 39), this Court GRANTS the Motions for the following reasons.

---

[1] Defendant Geneva Enterprises, LLC's will be referred to as "GE" and Defendant CVY of Alexandria, LLC will be referred to as the "Dealer."

## I. BACKGROUND

### A. Factual Background[2]

In the instant civil action, Plaintiff alleges: (i) a breach of contract claim against the Dealer and GE (Count I); (ii) a violation of the Virginia Consumer Protection Act, Va. Code § 59.1-196, *et seq.*, (the "VCPA") against all Defendants (Count II); (iii) a breach of express and implied warranties under the Magnuson-Moss Warranty Act ("MMWA") against GM (Count III); and (iv) a breach of express and implied warranties under the Virginia Motor Vehicle Warranty Enforcement Act (the "VWEA") against GM (Count IV).

Plaintiff alleges that, on January 27, 2021, he purchased a new but defective 2021 Chevrolet Corvette (the "Vehicle") from Bomnin Chevrolet Manassas in Manassas, Virginia. Dkt. 29 ¶ 14.

Plaintiff alleges that Dealer is a GM authorized car dealership, who engages in consumer transactions related to Chevrolet vehicles. *Id.* ¶ 15. As part of its business, Dealer operates a GM authorized "Service Center" that schedules and completes repairs and maintenance on Chevrolet vehicles. *Id.* ¶ 16.

Plaintiff asserts that, in purchasing the Vehicle, he relied on GM's representations that accompanied the sale of the Vehicle, including the representation that GM would repair any defect in material or workmanship for up to 100,000 kms or with a term of thirty-six months (the "Warranty" or "Warranties"). *Id.* ¶ 19. Plaintiff asserts the GM's authorized dealers, like Dealer here, expressly assented to perform warranty repairs on the Vehicle necessary to bring GM in compliance with the Warranties. *Id.* ¶ 20. To that end, Plaintiff alleges that GM enters into Dealer

---

[2] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the First Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

2

Sales and Services Agreements with dealers, like Dealer. *Id.* ¶¶ 21-22. As part of that agreement, GM maintains a high level of control over Dealer's warranty repairs which are contained within the GM Service Policies and Procedures Manual. *Id.* ¶ 23. In return for adhering to these agreements and policies, Plaintiff alleges that GM pays its authorized dealerships monetary compensation. *Id.* ¶ 25. Thus, Plaintiff asserts that Dealer is an agent of GM for purposes of vehicle repairs and that Plaintiff is a third-party beneficiary of the contract(s) between GM and Dealer. *Id.* ¶¶ 26-28.

Plaintiff alleges that on or around August 2021, he experienced a transmission issue and brought the Vehicle to Dealer. *Id.* ¶ 29. According to Plaintiff, Dealer kept the Vehicle until October 15, 2021. *Id.* ¶ 30. During this two-month period, Dealer informed Plaintiff that it had: replaced the transmission, performed a multi-point inspection, and performed the first oil change. *Id.* ¶ 31. GM covered the cost of the transmission replacement pursuant to the Warranties. *Id.* ¶ 32. Additionally, at the time of service, the odometer on the Vehicle read 3,446 miles. *Id.* ¶ 33. On October 15, 2021, Plaintiff retrieved the Vehicle and Dealer provided Plaintiff with an invoice for the alleged repairs (the "First Invoice"). *Id.* ¶ 34.

On July 15, 2022, as Plaintiff was driving, the Vehicle began making loud sounds and then broke down on the side of the road. *Id.* ¶ 35. At that time, the Vehicle's odometer read 8,508 miles. *Id.* ¶ 36. Plaintiff had the Vehicle towed to Radley Imports Inc. d/b/a Radley Chevrolet ("Radley Chevrolet") for repairs. *Id.* ¶ 37.

On July 16, 2022, Radley Chevrolet inspected the vehicle and advised that there was substantial damage to the left-rear axle shaft and subframe of the Vehicle. *Id.* ¶ 38. Radley Chevrolet informed Plaintiff that this repair would not be covered by the Warranties. *Id.* ¶ 40. The technicians informed Plaintiff that the left-rear shaft disconnected from the transmission and

that damage to the Vehicle was caused by Dealer's improper installation of the replacement transmission. *Id.* ¶ 41. The technicians "reasoned" that Dealer performed the reconnection of the left-rear axle shaft improperly, which led to the left-rear axle disengaging from the transmission on July 15, 2022, and the disengagement damaged the sub-frame. *Id.* ¶ 43. Radley Chevrolet advised Plaintiff to tow the Vehicle to Dealer's business, since they performed the transmission replacement. *Id.* ¶ 44.

That same day, Plaintiff had the Vehicle towed to Dealer's Service Center. *Id.* ¶ 45. On July 18, 2022, Dealer inspected the Vehicle and advised Plaintiff that the repairs would be performed pursuant to the Warranty. *Id.* ¶ 46. The Service Manager, David Lineham, claimed the damages to the Vehicle's subframe were nonstructural and stated he was communicating with the GM representative to determine whether the subframe damage would be covered under the Warranty. *Id.* ¶ 47. Plaintiff insisted that no repairs to the Vehicle be completed until Plaintiff received confirmation that GM would repair the subframe under the Warranty. *Id.* ¶ 48.

On July 19, 2022, Dealer, without authorization, initiated repairs to fix only the left-rear axle shaft. *Id.* ¶ 49.

Despite already initiating repairs, Lineham represented to Plaintiff that Dealer was awaiting the arrival of parts and that the repairs would be done on the left-rear axle shaft under the Warranty after they received parts. *Id.* Lineham also informed Chevrolet Customer Care Advisor Kiara that the bolts connecting the left-rear half shaft were installed correctly, but failed due to defective parts and that Dealer was awaiting new parts. *Id.* ¶ 51.

While at Dealer, Plaintiff discussed selling the Vehicle back to Dealer with General Manager Hal Farrington. *Id.* ¶ 52. Farrington introduced Plaintiff to Corvette Specialist Anthony Williams to discuss the sale of the Vehicle and the purchase of a new Chevrolet Corvette. *Id.* A

copy of the Corvette "build" was emailed to Plaintiff by Williams while Plaintiff was at Dealer. *Id.* Williams and Farrington consulted on a potential sales price, but no agreement could be reached. *Id.* ¶ 53.

On August 8, 2022, Lineham informed Plaintiff that GM had said (telephonically) that repair of the subframe would not be done on the Warranty and also informed Plaintiff that work had already been done to repair the left-rear half shaft. *Id.* ¶ 54. Plaintiff had never authorized the repair. *Id.* ¶ 54. Plaintiff discussed this new development with Kiara over the telephone and email and inquired regarding GM's records. *Id.*

On August 9, 2022, Lineham emailed Plaintiff photographs of the Vehicle's damaged subframe. *Id.* ¶ 55. In response, Plaintiff sent Lineham four follow up emails: (i) requesting additional photographs of the Vehicle's subframe to display the bolts or axle; (ii) acknowledging Lineham's representation that he would request written documentation from GM; (iii) requesting that an oil change be performed on the Vehicle; (iv) requesting records of the services performed to the Vehicle; and (v) requesting the estimated time when the repairs would be completed on the Vehicle. *Id.* ¶¶ 55-56. Lineham did not respond to the emails but performed the oil change on the Vehicle. *Id.* ¶ 57.

Plaintiff was later assigned a new Customer Care Provider, Rosetta. *Id.* ¶ 58. Plaintiff informed Rosetta, over the telephone and over email, Plaintiff's understanding that Dealer was performing repairs to the left-rear half shaft under the Warranties, but that GM had rejected repairing the subframe. *Id.*

On August 12, 2022, Plaintiff picked the Vehicle up from Dealer. *Id.* ¶ 59. Plaintiff spoke to Lineham regarding the repairs to the Vehicle and received an invoice. *Id.* ¶ 60. The invoice stated that the repairs were paid "INTERNALLY," rather than "WARRANTY." *Id.* Plaintiff

questioned the description which contradicted what Lineham had told Plaintiff previously. *Id.* Lineham stated that Dealer paid for the repairs and confirmed that the invoice was correct. *Id.*

On August 24, 2022, Plaintiff spoke to the Dealer Vice President of Customer Relations, Jim Smith, regarding his experience with the Vehicle. *Id.* ¶ 61. Smith represented that he would speak to Lineham and Farrington. *Id.*

That same day, Plaintiff received a call from Lineham who claimed that the invoice needed to be corrected, and a new invoice issued. *Id.* ¶ 62. Both the August 12, 2022 invoice and the new invoice contain a warranty from Dealer regarding factory parts and labor for a period of 12 months or 12,000 miles. *Id.* ¶ 63. The new invoice, however, "was altered to make it appear as if more repairs were performed under the Warranty rather than paid for internally by Dealer." *Id.* ¶ 64. Specifically, the August 12, 2022 invoice states that the "Warranty payment code is applied only to 'check and advise' as well as 'provided est [sic] for LR axle." *Id.* ¶ 65. The new invoice states "the actual repairs done under the Warranty payment code modified to 'removed and replaced the left side axle assembly only per GM." *Id.*

According to Plaintiff, the new invoice therefore "is made to appear as if repairs were initiated on the Vehicle on July 16, 2022 and that the inspection/removal of the subframe began on July 19, 2022." *Id.* ¶ 66. The new invoice also indicates that the Vehicle was "towed on July 19, 2022, after repairs to the Vehicle began," rather than the July 16, 2022 tow date. *Id.* ¶ 67.

On August 25, 2022, Plaintiff spoke with Smith again regarding the new invoice. *Id.* ¶ 68. Smith had the new invoice but was unaware of the August 12, 2022 invoice and did nothing when Plaintiff informed him of the contradictions between the two invoices. *Id.*

Thereafter, that same day, Plaintiff spoke with a Chevrolet Customer Care Manager regarding the Vehicle and invoices. *Id.* ¶ 69. As a result of this conversation, GM created a "CCC

6

UPA Alert, Case No. 9-8066131709" and requested that Plaintiff provide an itemized breakdown of what was and was not covered under the Warranty. *Id.* The Customer Care Manager emails also stated that "[t]he customer is requesting this information based on a modified receipt." *Id.* Plaintiff received no follow up regarding the matter. *Id.*

In the evening, Plaintiff spoke with Farrington who maintained that the new invoice was correct and represented that additional information would be provided to Plaintiff. *Id.* ¶ 70. Plaintiff requested that additional photographs be provided. *Id.* Plaintiff has received no additional information. *Id.*

On September 12, 2022, Plaintiff spoke with Justin Taylor, a Service Advisor at Radley Chevrolet. *Id.* ¶ 71. Taylor stated that Radley Chevrolet's system would show whether any work was performed on the Vehicle pursuant to the Warranty, even work performed by other dealerships. *Id.* Taylor represented to Plaintiff that Radley Chevrolet's system displayed no evidence that any work was performed on the Vehicle under the Warranty in 2022. *Id.*

Plaintiff obtained an estimate of $7,721.38 from Michael Rodriguez of Waldorf Chevrolet regarding the cost to replace the Vehicle's subframe. *Id.* ¶ 72. Plaintiff refused to replace the subframe given the out-of-pocket cost. *Id.*

In August 2022, the value of pre-owned vehicles was at an all-time high given the pandemic. *Id.* ¶ 73. Thus, Plaintiff wished to sell the Vehicle without repairing the subframe. *Id.*

On August 12, 2022, Plaintiff went to Jack Winegardner Chevrolet ("JWC") to attempt to sell the Vehicle. *Id.* ¶ 74. JWC had no interest in purchasing the Vehicle with the damaged subframe. *Id.* Similarly, Radley Chevrolet had no interest in purchasing the Vehicle given the damage to the subframe. *Id.* As of August 15, 2022, the value of the Vehicle – had the subframe

not been damaged – was $98,080. *Id.* ¶ 76. Plaintiff also tried to sell the Vehicle to a service that specialized in damaged vehicles, CarBrain. *Id.* ¶ 77.

On October 28, 2022, Plaintiff sent a demand, by counsel, to Dealer. *Id.* ¶ 78. He did not receive a response. *Id.*

On February 7, 2023, Plaintiff sent a demand, by counsel, to GM to provide it an opportunity to cure. *Id.* ¶ 79. GM's Negotiator Kayla Belanger refused. *Id.*

B.  Procedural Background

On July 20, 2023, Plaintiff filed his Complaint with this Court. Dkt. 1. On March 29, 2024, the Court issued a Memorandum Opinion and Order granting GM's motion to dismiss Count II – the VCPA claim. Dkt. 25. The Court found that Plaintiff had not plausibly alleged an agency relationship between GM and Dealer, such that Dealer's statements were not attributable to it. *Id.* After the Memorandum Opinion and Order issued, Plaintiff amended his complaint. Dkt. 29. This mooted any consideration of the then-pending motion to dismiss by Dealer and GE. Dkt. 30.

On May 9, 2024, GM filed its Motion to Dismiss Counts II and IV of the Amended Complaint. Dkt. 32. On May 17, 2024, Dealer and GE filed their Motion to Dismiss Count II of the Amended Complaint. Dkt. 36. Plaintiff filed his Oppositions. Dkts. 38, 41. Finally, GM filed a Reply brief. Dkt. 39

II.  STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When

8

reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

In addition to this general pleading standard, "fraud-based claims must satisfy [Federal Rule of Civil Procedure] 9(b)'s heightened pleading standard." *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013)). "Rule 9(b) requires that 'a party must state with particularity the circumstances constituting fraud or mistake.'" *Id.* (quoting Fed. R. Civ. P. 9(b)). And "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savanna River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

### III. ANALYSIS

All Defendants seek to dismiss Count II of the Amended Complaint, the VCPA claim. GM also seeks to dismiss Count IV, which asserts a claim under the VWEA. The Court will address each claim in turn.

A.   The VCPA

As this Court has previously recognized, to state a claim under the VCPA, a plaintiff "must allege (1) a fraud, (2) by a supplier, (3) in a consumer transaction." Va. Code Ann. § 59.1-200(A); *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D.Va. 2010). "An allegation of a misrepresentation 'must include the elements of fraud: a false representation, of material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage.'" *Jefferson v. Briner Inc.*, No. 3:05-cv-652, 2006, WL 1720692, at *9 (E.D. Va. June 21, 2006) (internal citations omitted). A false representation must be on an existing fact, and a "mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character." *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 554 (E.D. Va. 2001) (internal quotation marks and citation omitted) (holding that a "failure to fulfill [a] promise is a claim sounding in contract, not in the VCPA").

As a claim sounding in fraud, a VCPA claim must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015). Therefore, Plaintiff is "required to state with particularity the circumstances constituting fraud or mistake," including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wynn's Extended Care, Inc.*, 619 F. App'x at 220 (quoting *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015)). Rule 9(b)'s particularity requirement applies to both intentional fraud claims and claims of negligent representation. Further, "[w]hen an agency relationship is allegedly part of the fraud, the circumstances constituting fraud on the part of the purported principal, which must be pled with particularity under Rule 9(b), include both the facts constituting the underlying fraud and the facts establishing the agency relationship." *Adams v.*

10

*NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (citing *Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y.1996)).

        i.       Whether the alleged Statements Constitute Misrepresentations

Defendants first argue that several of the alleged statements upon which Plaintiff purports to rely do not qualify as misrepresentations under the VCPA. Dkt. 37 at 4. In the allegations in support of Count II of the Amended Complaint, Plaintiff specifically asserts that the misrepresentations are: (i) that the repairs would be covered under the Warranty;[3] (ii) that the damage to the subframe was nonstructural; (iii) that the damage was caused by part failure; (iv) the date on which the Vehicle was towed; (v) that the repairs to the left-rear axle were made pursuant to Warranty as suggested in the new invoice; and (vi) that further information would be provided. Dkt. 29 ¶¶ 112-15. In the Opposition briefs, Plaintiff identified additional alleged misrepresentations: (i) that the transmission was installed correctly in 2021; (ii) that Dealer was awaiting parts to perform the repairs to the left-rear axle; and (iii) that Dealer misrepresented that

---

[3] In this regard, it is important to keep in mind that the Vehicle required two different repairs: (i) repairs to the left-rear axle; and (ii) repairs to the subframe. Although Plaintiff, in Count II, alleges that "Dealer represented that the repair to the Vehicle's left-rear axle shaft and the Vehicle's subframe was covered under the Warranty," Dkt. 29 ¶ 112, *see also id.* ¶ 114 (referring to "all repairs"), the allegation that the subframe would be covered under the Warranty is contradicted by the factual allegations of the Amended Complaint, *Id.* ¶ 40 (Radley Chevrolet informing Plaintiff that repairs would not be covered by the Warranties), ¶ 47 (Dealer stating that it was communicating with GM regarding *whether* the repairs to the subframe would be covered under the Warranty), ¶ 48 (Plaintiff acknowledging that he was aware that no determination had been made regarding whether repairs to the subframe would be covered by the Warranty), ¶ 54 (Plaintiff informed that repair to the subframe would *not* be covered by the Warranty), ¶ 58 (Plaintiff confirming to GM that he understood that the subframe repairs would not be covered by the Warranty). Thus, to the extent Plaintiff attempts to rely on any misrepresentation with respect to the repairs it can only be to the extent that Plaintiff alleges that he was told that the damages to the left-rear axle would be repaired pursuant to the Warranty (rather than with the repairs paid for internally by Dealer).

11

the repairs to the left-rear axle were paid for "internally."  Dkts. 38 at 15-16, 41 at 9-10.[4]  Again, when Plaintiff refers generally to repairs, it can only be with respect to the left-rear axle, because Plaintiff does not allege that Dealer or GM ever represented that the damage to the subframe would be covered by the Warranty or that the subframe has ever been repaired.  Dkt. 29. ¶ 47 (on July 18, 2022, Lineham was communicating with GM to "determine whether" the subframe "was covered"), ¶ 54 (on August 8, 2022, Plaintiff was informed that the subframe was not covered).

To begin with, the Court addresses the misrepresentations identified for the first time in the Opposition Briefs.  It is axiomatic that Plaintiff cannot amend his complaint through an opposition brief.  *See Henderson v. City of Roanoke, Va.*, 2022 WL 704351, at *3 (4th Cir. 2022) (holding that "no litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy'").  The Amended Complaint did not allege the three additional alleged misrepresentations that Plaintiff identifies as forming the basis of his VPCA claim for the first time in his Opposition Briefs.  Thus, these allegations cannot be a basis on which to deny the Motions to Dismiss.

With respect to the specific statements alleged, three statements fail because they either do not constitute a representation or are not alleged to be false.  To begin with, Plaintiff does not allege that Defendants made any statement in connection with the installation of the transmission.

---

[4] To the extent Plaintiff attempts to premise his VCPA claim on the Warranty itself and his detrimental reliance on the Warranty when he purchased the Vehicle, Plaintiff has not alleged any fraud or falsity with respect to the Warranty itself.  Plaintiff argues that "GM had no intention to honor the [W]arranty and GM would not honor the [W]arranty." Dkt. 38 at 14.  But the allegations that Plaintiff cites in the Amended Complaint do not create an inference that GM never intended to honor the Warranty or that there was any false statement made in connection with the purchase of the car and conveyance of the Warranty.  *Id.* (citing Dkt. 29 ¶¶ 54, 58, 69, 109, 110).  Rather the allegations upon which Plaintiff relies, merely establish that, when confronted with a claim under the Warranty, GM denied it.  That is the basis of the claims in Counts III and IV but are not appropriately brought as a VCPA claim.

12

Plaintiff simply argues without citation to any allegation in the Amended Complaint that there is "an implied misrepresentation." Dkt. 41 at 9. Next, Plaintiff cannot premise any claim on the statement that the repairs were paid for internally, because the Amended Complaint is premised on the fact that this was a true statement. Plaintiff asserts that the repairs were not made under Warranty, and thus that they were made "internally" as reflected on the August 12, 2022 invoice. Dkt. 29 ¶ 115 (asserting that there were no records that the repairs were made pursuant to warranty); *Fox v. Encounters Int'l*, 318 F. Supp. 279, 292 (D. Md. 2002) (holding that a plaintiff may not rely on allegations that are true to support a VCPA claim); *Lambert v. Downtown Garage, Inc.*, 262 Va. Cir. 707, 711 (2003) (holding that "a misrepresentation of fact is a necessary element of proof"). Similarly, Plaintiff cannot premise a claim on the alleged representation that the damage to the subframe was "nonstructural" because Plaintiff does not make any factual allegations that this representation was false.

Plaintiff's argument that Defendants misrepresented that the repairs "would be" covered by the Warranty also fails, because this is a misrepresentation regarding coverage which is not a statement of existing fact. Dkt. 29 ¶¶ 50 (alleging Plaintiff informed that repairs to the left-rear axle "would be done" under Warranty), 114 (alleging that Plaintiff was informed that "repairs would be covered"). As judges in this District and in the Virginia state courts have recognized "[a] mere promise to perform an act in the future is not, in a legal sense, a representation." *Nigh v. Koons Buick Pontiac GM, Inc.*, 143 F. Supp. 2d 535, 554 (E.D. Va. 2001) (finding no VCPA claim where the alleged statement was that the dealer "would pay off the trade-in") (quoting *Patrick v. Summers*, 235 Va. 452 (1988)). Here, the alleged statement that the repairs would be covered is in the same vein as the statement found not to be a misrepresentation by the *Nigh* Court. Plaintiff seeks to avoid this result by arguing that the repairs had already begun when the

13

representations were made; but this is unavailing, because Plaintiff's claim is premised on the statement made (which concerns future events) not on the facts unknown to him at the time of the representation. The portion of the statement on which Plaintiff purports to rely is the reference to coverage and that statement was in terms of future of events – namely that the repairs "would be" covered under the Warranty. Similarly, the representation that further information "would be provided" is also a promise regarding a future act which cannot form the basis for a VCPA claim. Dkt. 29 ¶ 115 (alleging that Defendants stated "additional evidence would be provided" and that they "never provided this information").

The Court next analyzes whether Plaintiff has adequately alleged detrimental reliance with respect to each remaining statement.[5]

      ii.  Whether Plaintiff has alleged Detrimental Reliance

"Virginia courts have consistently held that reliance is required to establish a VCPA claim." *Adardour v. Am. Settlements Inc.*, 2009 WL 1971458, at *3 (E.D. Va. July 2, 2009) (collecting cases); *see also Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 189 (E.D. Va. 2005) ("[T]he VCPA's plain language as consistently construed by the courts[ ] requires that a[ ] VCPA claimant show that he relied on the alleged misrepresentations . . . . [A plaintiff is thus] required to prove reliance on the alleged misrepresentations to recover under the VCPA."). Here, Plaintiff has failed to allege detrimental reliance with respect to the remaining statements.

As an initial matter, the only reference with respect to reliance in Count II is the conclusory allegation that "Plaintiff relied upon statements by Dealer to his detriment in connection with

---

[5] In their briefs, Defendants also address the allegation that the repairs were made "without authorization." But Plaintiff does not claim that the fact that the repairs were made without authorization supports his VCPA claim in either the Amended Complaint or his Opposition Briefs. Accordingly, the Court does not address it here.

permitting Dealer to perform services on his Vehicle." Dkt. 29 ¶ 108.  As district courts within the Fourth Circuit have recognized, reliance must be alleged with "sufficient particularity." *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 657 (W.D. Va. 2013).  But even looking beyond the specific allegations in support of Count II, Plaintiff has failed to allege reliance.

Plaintiff does not allege any action that he took or did not take based on the allegation that the repairs would be covered under the Warranty.  He alleges no action that he took or did not take based on the representation that the damage to the subframe was nonstructural – indeed Plaintiff does not suggest that this was false.  Plaintiff alleges no action that he took or did not take based on the representation that the damage was caused by part failure.  Plaintiff alleges no action that he took or did not take based on the representation regarding the date on which the Vehicle was towed, of which Plaintiff only became aware when he received the new invoice on August 24, 2022.  With respect to the allegations regarding the August 12, 2024 invoice and the new invoice, far from showing reliance, the Amended Complaint reflects that Plaintiff was skeptical about both invoices.  Dkt. 29 ¶¶ 65, 68 (informing people of the contradictions between the two invoices).  Plaintiff alleges no action that he took or did not take based on the representation that the Dealer was awaiting parts to complete the repair.  Finally, Plaintiff alleges no action that he took or did not take with respect to the representations that further information would be provided.

In his Opposition to the GM Motion to Dismiss, Plaintiff argues that, "while he awaited word on what work would be performed under the [W]arranty, if any, he lost [the] opportunity to use his Vehicle, to have other work performed on his Vehicle by alternative service providers, and to sell his Vehicle." Dkt. 38 at 17.  In his Opposition to the Dealer and GE's Motion to Dismiss, Plaintiff adds the argument that, but for the representation that repairs "would be performed pursuant to [W]arranty and the damage to the [V]ehicle was nonstructural, Plaintiff would not have

15

left his [V]ehicle in Dealer's care for so long and would not have suffered damages for loss of use and inconvenience." Dkt. 41 at 16. But the Opposition Brief's concession that he was waiting for word of what work, "if any," would be under Warranty, reveals that these alleged losses were the result of delay – not reliance on any statement. Moreover, the allegations that Plaintiff would have turned to other service providers or been able to sell the Vehicle are belied by the Amended Complaint. Dkt. 29 ¶ 72 (alleging Plaintiff went to an alternative service provider and did not want to pay the cost of repairs to the subframe), ¶¶ 74-76 (alleging Plaintiff attempted to sell his car). Further, the damages associated with this alleged reliance all appear to relate to the damage to the subframe and Plaintiff has not alleged that Dealer ever informed Plaintiff that the damage to the subframe would be covered by the Warranty. *Id.* ¶ 47 (on July 18, 2022, Lineham was communicating with GM to "determine whether" the subframe "was covered"), ¶ 54 (on August 8, 2022, Plaintiff was informed that the subframe was not covered). Plaintiff has therefore not adequately alleged detrimental reliance with respect to the remaining alleged misrepresentations.

      iii.  Whether Plaintiff has Adequately Alleged Damages

Plaintiff's failure to allege detrimental reliance is compounded by his failure to adequately allege damages. This is so because Plaintiff's damages are primarily focused on impact of the failure to repair the subframe. Dkt. 29 ¶¶ 74-76, 116 (alleging damages of $98,080 based on the perceived value of the Vehicle – if it were undamaged – in August 2022 and alleging that no one wanted to buy the Vehicle because of the unrepaired damage to the subframe). But Plaintiff has not plausibly alleged that there was any misrepresentation with respect to the subframe.[6] *Id.* ¶ 47

---

[6] Again, the Court notes that Plaintiff has conclusorily asserted that it was misrepresentation for Dealer to say that the damage was nonstructural. But Plaintiff neither alleges that the damage was structural nor alleges that Plaintiff relied on the representation that it was not structural.

16

(on July 18, 2022, Lineham was communicating with GM to "determine whether" the subframe "was covered"), ¶ 54 (on August 8, 2022, Plaintiff was informed that the subframe was not covered).[7] Thus, the damage to and failure to repair the subframe cannot form the basis of Plaintiff's VCPA claim, because it does not flow from any of the alleged misrepresentations that Plaintiff alleges Dealer made.

*   *   *

In sum, Plaintiff has failed to allege a plausible VCPA claim because: (i) several of the statements do not qualify as misrepresentations under the VCPA; (ii) Plaintiff has not alleged detrimental reliance with respect to the remaining statements; and (iii) Plaintiff has not alleged damages with respect to any of the alleged misrepresentations. Accordingly, the Motions to Dismiss will be granted with respect to Count II.[8]

### B. The VWEA

GM also seeks to dismiss Count IV, the VWEA or Lemon Law claim, which is asserted solely against GM, based on the statute limitations. To dismiss a claim on the ground that the statute of limitations has expired, the Court must find that the expiration of the statute of limitations is clear on the face of the Complaint. *Nasim v. Warden*, 42 F.3d 1472 (4th Cir. 1995); *see also Prasad v. Delta Sigma Theta Sorority, Inc.*, 2017 WL 4399551, at *3 (E.D. Va. Oct. 3, 2017). Here, the parties agree that generally the statute of limitations for a VWEA claim is 18 months.

---

[7] Thus, even if Plaintiff could premise his claim on the alleged misrepresentation that the "repairs" would be covered under the Warranty rather than performed internally as asserted in the August 12, 2022 invoice and by Radley Chevrolet, Plaintiff's claim would fail because: (i) Plaintiff has alleged that the left-rear axle was repaired; (ii) Plaintiff has not alleged reliance or damages premised on whether those repairs were paid for internally or under Warranty; and (iii) Plaintiff has not alleged that he was ever told that the damage to the subframe would be covered.

[8] Because Plaintiff has failed to state a claim under the VCPA, the Court need not analyze whether Dealer's statements can be imputed to GM based on an agency relationship.

17

Dkt. 33 at 7 (citing Va. Code § 59.1-207.11); Dkt. 38 at 20.  Plaintiff alleged that he purchased the Vehicle on January 27, 2021, which resulted in an expiration period of July 27, 2022.  Dkt. 29 ¶ 14.  Plaintiff did not file this lawsuit until July 20, 2023, and did not add this claim until April 24, 2024.  *Comp.* Dkt. 1 *with* Dkt. 29.  Thus, on the face of the Amended Complaint, it would appear that Plaintiff's VWEA claim is outside the statute of limitations.

Plaintiff argues that he qualifies for an exception to the statute of limitations.  Namely, that "the lemon law rights period shall be extended if the manufacturer has been notified but the nonconformity has not been effectively repaired by the manufacturer, or its agent, by the expiration of the lemon law rights period."  Va. Code § 59.1-207.13.  GM argues that this provision is an evidentiary provision that does not impact the statute of limitations, and argues that, pursuant to Va. Code § 59.1-207.16, the only action that extends the statute of limitations period is participation in an informal dispute resolution process (which Plaintiff has not alleged that he did).  Dkt. 39 at 3.  Because this dispute involves a question of Virginia law, this Court looks primarily to how courts in Virginia have addressed the matter.  Although there are relatively few decisions interpreting the interaction between these various provisions of the VWEA, the two most recent decisions from the Virginia circuit courts counsel in favor of GM's interpretation of the VWEA.

Plaintiff relies primarily on *Searle v. General Motors Corp.*, 46 Va. Cir. 328 (Loudoun Cty. 1998), which held that the Va. Code § 59.1-207.13(C) essentially provided an open-ended extension of the statute of limitations provided that the customer notified the manufacturer of a nonconformity within eighteen months.  *Id.* at 329.  The *Searle* Court instructed manufacturers that, if they found fault with the court's interpretation, those arguments "should be addressed to the legislature."  *Id.*

As subsequent cases recount that appears to be what manufacturers did.  *See Randel v. FCA*

18

*US, LLC*, 106 Va. Cir. 388, 2020 WL 10315454, at *6 (Norfolk 2020). In 1999, there was an amendment to the statute, and Section 59.1-207.16, entitled "Action to be brought within certain time," stated that, all actions "shall be commenced within the lemon law rights period" except that persons who have engaged in informal dispute settlement procedures in accordance with Section 59.1-207.15 shall have: (i) 12 months from the date of final action; or (ii) the original lemon law rights period, whichever is longer. Va. Code § 59.1-207.16. Thus, the cases interpreting the statute of limitations period post-1999 have generally held that "section 59.1-207.13(C) does not extend the Lemon Law statute of limitations, which is laid out exclusively in section 59.1-207.16." *Randel*, 2020 WL 10315454, at *8; *see also Nikolov v. Ford Motor Co.*, 104 Va. Cir. 327, 2020 WL 8994926 (Norfolk 2020) (referring to a 2019 Order sustaining a plea in bar that Section 59.1-207.13 did not extend the statute of limitation).[9]

This Court finds the *Randel* case persuasive and consistent with the plain language of the VWEA. Section 59.1-207.16 is clear that "*any action* brought under this chapter *shall* be commenced within the lemon law rights period" and the only exception provided in that section is for those who utilize an informal dispute process. Va. Code § 59.1-207.16 (emphasis added). As the Supreme Court has recognized, "[a] well established canon of statutory interpretation" is that "the specific governs the general." *RadLax Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Here, Section 59.1-207.16 is specific statutory provision which governs when "any action" may be brought and thus its limitations' period governs here. Accordingly, GM's

---

[9] A third case has touched upon this issue, *Kniska v. Subaru of Am., Inc.*, 62 Va. Cir. 23 (Fairfax 2003), which held that Section 59.1-207.13 "extend[s]" the statute of limitations "if the customer provides 'notification' to the manufacturer." But that case did not discuss the 1999 amendments to the statute in the wake of the *Searle* decision nor did it engage with the express limitations provided in Section 59.1-207.16.

Motion to Dismiss will be granted in this regard.[10]

## IV.   CONCLUSION

In sum, the Court will grant both Motions to Dismiss and will dismiss Counts II and IV in their entirety.  Although Plaintiff seeks leave to amend the Amended Complaint if the Motions are granted (Dkt. 38 at 23), it does not appear to the Court that there are any further allegations that Plaintiff could add which would both save the claims that are dismissed and not contradict the allegations in the current complaint.  Furthermore, this case has been pending for two years and should proceed to discovery on the claims that survive: Counts I and III.

Accordingly, it is hereby ORDERED that Defendant GM's Motion to Dismiss Counts II and IV (Dkt. 32) is GRANTED; and it is

FURTHER ORDERED that Defendants Dealer and GE's Motion to Dismiss the VCPA Claim (Dkt. 36) is GRANTED; and it is

FURTHER ORDERED that Counts II and IV are DISMISSED.

It is SO ORDERED.

Alexandria, Virginia
March 24, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[10] The Court notes that Plaintiff's interpretation would effectively permit plaintiffs to wait indefinitely to file a VWEA claim so long as they provide "notice" to the manufacturer within the eighteen-month window.  Dkt. 38 at 22.  Essentially, to be timely, Plaintiff's notice of the issues with the subframe and left-rear axle in July 2022 (days before the 18-month window expired) would have to extend the statute of limitations for another *two years* until July 2024, when Plaintiff filed the Amended Complaint which for the first time asserted a VWEA claim.  That cannot be squared with Section 59.1-207.16's clear limitations.